UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                              No. 2:19-CR-20012

REBECCA IRENE BRENES and
JOSE SABINO JIMENEZ-CRUZ                                                              DEFENDANTS

**OPINION AND ORDER**

Defendant Rebecca Irene Brenes filed a motion to suppress and brief in support (Doc. 34). The Government filed a response (Doc. 38). Defendant Jose Sabino Jimenez-Cruz also filed a motion to suppress (Doc. 37) which adopts Brenes's motion in its entirety.[1] Jimenz-Cruz's attorney makes no separate arguments on his client's behalf, and the motion depends entirely on Brenes's motion, so the Government has not filed a separate response. Counsel for Brenes requested a hearing on the motion, while counsel for the Government believes the briefs sufficiently communicate the necessary facts and law. No hearing will be held, but neither Brenes nor Jimenez-Cruz will be prejudiced because the Court will grant the motions to suppress.

**I.   Background**

On January 30, 2019, Brenes was driving a rented Jeep Compass in which Jimenez-Cruz was riding. Brenes failed to yield at an intersection in the City of Van Buren in Crawford County, Arkansas, and struck another vehicle. No one was injured. Corporal Erik Jensen, a field training officer with the Van Buren Police Department, and Officer Micheel Stephenson, his trainee, arrived at the scene. Brenes was asked to fill out an accident report. At the scene, Brenes told

---

[1] Following Jimenez-Cruz's motion, his appointed attorney took employment with the office of the Crawford County, Arkansas Prosecuting Attorney and withdrew from representation of Jimenez-Cruz. The Court inquired by email with appointed successor counsel for Jimenez-Cruz whether he desired to supplement the motion for his client. Successor counsel did not respond.

1

Corporal Jensen she and Jimenez-Cruz were traveling from California to Georgia to attend a wedding. Corporal Jensen took note of their luggage, which he described as "very little luggage for a cross-country trip." (Doc. 38, p. 2). Corporal Jensen also noticed "several side conversations between Brenes and Jimenez-Cruz fully in Spanish." *Id*. Corporal Jensen conducted a records check on Brenes and dispatch reported that her California drivers license had been suspended. Officer Stephenson arrested Brenes for driving on a suspended license, and she was handcuffed and placed in the back of the patrol car.[2] Brenes asked to speak to Jimenez-Cruz, then yelled something to him in Spanish. Brenes was not given *Miranda* warnings.

By this time, Sergeant Donald Eversole (another Van Buren police officer) had arrived at the scene. After Brenes was restrained and put into the back of the patrol car, Corporal Jensen told Sergeant Eversole "something wasn't right with the story he got" and he was going to ask whether anything illegal was in the vehicle. (Docs. 34, pp. 2 -3). Corporal Jensen returned to the patrol car and began to question Brenes. He directly asked her whether there was anything illegal in the vehicle and told her the vehicle would be searched before it was towed. Brenes did not respond. Not accepting her silence, Corporal Jensen again asked if anything illegal was in the vehicle, and asked Brenes to be honest. Brenes stated that Jimenz-Cruz was carrying a small amount of marijuana on him. Corporal Jensen did not believe Brenes so he questioned her again, asking whether there was anything else in the vehicle. Brenes's eyes teared up, and Corporal Jensen asked if there were any weapons in the vehicle. Brenes indicated with a head-shake that the answer was

---

[2] No party has explained whether it is standard practice for the Van Buren Police Department to arrest drivers believed to have committed this misdemeanor offense, which in many cases will not even apply to drivers whose licenses were issued by another state. *See, e.g.*, *Sievers v. City of Fort Smith*, 894 S.W.2d 940 (Ark. 1995) (reversing conviction and dismissing charges against driver whose Oklahoma license had been suspended for ten years because Arkansas suspensions could last only one year).

"no." Corporal Jensen then asked if there were any drugs in the vehicle, and Brenes nodded her head "yes" and said "a lot."

At some point (whether because the officers determined the Jeep was inoperable after arriving at the scene of the collision or because the driver, Brenes, was placed under arrest), the officers determined that the Jeep would be towed from the scene. The incomplete portions of the Van Buren Police Department policy provided by the Government require that an inoperable vehicle be towed either by a wrecker identified by the vehicle owner or by the next available wrecker on a list apparently maintained by the Van Buren Police Department. "The Van Buren Police Department Towing Policy also states that an Auto Storage Report is to be completed and on that report, there is an inventory section to be filled out." (Doc. 38, p. 10). The excerpts and description of the policy provided by the Government do not detail the extent of any inventory search required, whether officers are permitted or required to inventory the contents of containers within the vehicle, or the extent to which a vehicle's occupants may recover property from the vehicle before it is towed.

While Brenes was being questioned, because the Jeep was to be towed, and because Jimenz-Cruz was not under arrest for driving on a suspended license, he was offered a ride to a hotel. He asked to remove belongings from the Jeep, and was allowed to. After removing items from the cabin of the vehicle, Jimenez-Cruz opened the rear hatch and began to remove a suitcase. By this time, Brenes had informed Corporal Jensen that there were drugs in the Jeep. Corporal Jensen exited the patrol car, he or another officer said "drugs," and Corporal Jensen approached Jimenez-Cruz and asked him whether there were drugs in the car. Jimenez-Cruz responded "no," but Jensen moved him away from the luggage and arrested him. Sergeant Eversole then removed the suitcase from the vehicle, took it to the sidewalk, opened it, and discovered 45 bags of

methamphetamine weighing 71 pounds and three bags of oxycodone pills weighing 205 grams. Brenes, Jimenez-Cruz, and the Jeep were taken to the Van Buren Police Department. The record does not show whether any inventory of the vehicle's contents was actually conducted.

Defendants now move to suppress Brenes's statements to Corporal Jensen and physical evidence seized from the vehicle as a result of these statements.

## II. Law

For over fifty years it has been settled law that statements intentionally elicited during custodial interrogation of a defendant may not be used in the case-in-chief against the defendant unless the prosecution demonstrates that effective procedural safeguards were used to protect the defendant's Fifth Amendment privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). It has also been the case "that an out-of-court declaration made after arrest may not be used at trial against one of the declarant's partners in crime." *Wong Sun v. United States*, 371 U.S. 471, 490 (1963). For even longer, albeit with regularly growing exceptions to excuse police misconduct and limit suppression of evidence to those instances where it will deter that misconduct, it has been the law that:

> The Government cannot violate the Fourth Amendment—in the only way in which the Government can do anything, namely through its agents—and use the fruits of such unlawful conduct to secure a conviction. Nor can the Government make indirect use of such evidence for its case, or support a conviction on evidence obtained through leads from the unlawfully obtained evidence. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men.

*Walder v. United States*, 347 U.S. 62, 64–65 (1954) (citations omitted).

The Fourth Amendment's prohibition against unreasonable searches and seizures demands that an arrest or a search be supported by probable cause and, with few exceptions, conducted pursuant to a warrant. One long-recognized exception to the requirement that an arrest warrant

4

issue prior to seizure exists where "facts and circumstances within the law enforcement officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Morales*, 923 F.2d 621, 623 (8th Cir. 1991) (quoting *United States v. Caves*, 890 F.2d 87, 93 (8th Cir. 1989)). Where facts and circumstances include information the officer receives from another person, rather than from what the officer has directly observed, the information must be reliable to support probable cause. An officer "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Illinois v. Gates*, 462 U.S. 213, 242 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 269 (1960)).

With respect to searches, "[i]n the absence of a warrant, a search is reasonable *only* if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014) (emphasis added). Among those instances where a warrant might not be required are a search incident to lawful arrest, *id.*, search of an automobile and containers therein pursuant to probable cause, *Wyoming v. Houghton*, 526 U.S. 295, 299–301 (1999), and inventory searches of property impounded into police custody, *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Upon an arrest supported by probable cause, a law enforcement officer may search the arrested person and the area within his immediate control—"the area from within which he might gain possession of a weapon or destructible evidence." *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). When there is no chance an arrested person can access an area, a search of that area incident to arrest does not provide an exception to the warrant requirement. In some cases, where there is probable cause to believe an automobile and the containers within it contain contraband, law enforcement officers may search without a

warrant due to the inherent mobility of the vehicle and the reduced expectation of privacy therein, even if law enforcement officers impound the vehicle and remove the original justification for ignoring the warrant requirement. *Houghton*, 526 at 299–301; *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *Michigan v. Thomas*, 458 U.S. 259, 261 (1982). Upon a decision to impound a vehicle in the absence of probable cause to believe the vehicle contains contraband, it is lawful for police to conduct an inventory search of the vehicle's contents subject to standardized criteria or established routine, so long as the inventory search is not "a ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 U.S. at 4. Accordingly, inventory search procedures must be controlled by a policy, including with respect to inventorying the contents of closed containers, that regulates them sufficiently to prevent their abuse. *Id*.

Evidence that is only discovered as a direct result of illegal police activity—and that is not sufficiently attenuated from that activity to remove the taint and would not have been independently or inevitably discovered—is "fruit of the poisonous tree" and in many cases cannot be used in the Government's case-in-chief. *Wong Sun*, 371 U.S. at 487–88; *see also Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1988) ("Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality."). "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis v. United States*, 564 U.S. 229, 238 (2011) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).

Even in cases of obvious police misconduct, evidence that would inevitably or independently be discovered need not be excluded because exclusion in such cases "adds nothing to either the integrity or fairness of a criminal trial." *Nix v. Williams*, 467 U.S. 431, 446 (1984).

6

On these motions to suppress, the Government bears the burden of showing the admissibility of the statements made and the evidence seized pursuant to a warrantless search. *United States v. Flores-Sandoval*, 422 F.3d 711, 714 (8th Cir. 2005); *United States v. Kennedy*, 427 F.3d 1136, 1144 (8th Cir. 2005).

III. **Analysis**

   A. **Brenes**

The Government concedes that Corporal Jensen's interrogation of Brenes following her arrest, when he questioned her about her trip and whether anything illegal was in the Jeep, was custodial. (Doc. 38, p. 4). The Government does not show that Brenes received *Miranda* warnings prior to that custodial interrogation, and does not even argue that she received *Miranda* warnings until she reached the Van Buren Police Department. It is clear from the circumstances—the fact that Brenes was arrested, restrained, and placed in the back of a law enforcement vehicle, her initial silence, her first attempt to downplay the nature and quantity of controlled substances in the vehicle, and the obvious inference to be drawn from Corporal Jensen's repeated questions that he did not believe Brenes—that Brenes's statements following her arrest were not voluntary. It is also clear from the circumstances—including that Corporal Jensen was a field training officer who was at that time training Officer Stephenson—that the decision to interrogate Brenes about Corporal Jensen's suspicions stemming from the amount of luggage and the Spanish communications (and unrelated to Brenes driving on a suspended license) without giving her *Miranda* warnings was so far beyond borderline impropriety that it was at the very least grossly negligent. It is exactly this impropriety that the exclusionary rule is employed to deter. Brenes's statements are inadmissible in the Government's case-in-chief against her.

Furthermore, based on the offer made to Jimenez-Cruz of a ride to a hotel and the

7

agreement that he could take items from the Jeep with him to the hotel, it is clear that until law enforcement officers had Brenes's unwarned confession, none of them had an objective reason to suspect that the car or suitcase contained illegal contraband. It is also clear that, had Jimenez-Cruz finished removing the suitcase from the Jeep, it would not have been found in any search of the vehicle no matter which exception to the warrant requirement the Government relies upon. Even had he left the suitcase in the vehicle, the Government has not shown that Van Buren's vehicle inventory policy regulates the opening of containers within the vehicle and would have allowed the suitcase to be searched. And while the automobile exception applies to impounded vehicles in police custody, absent Brenes's unwarned and involuntary custodial confession there was no objective reason giving rise to probable cause to believe the Jeep or the suitcase contained contraband or evidence of the crime for which Brenes was arrested. The controlled substances in the suitcase were found only as a direct result of Brenes's illegally-obtained confession, there is no attenuation from that impropriety, discovery of the controlled substances was not inevitable, and the existence of the controlled substances in the vehicle cannot be admitted into evidence in the Government's case-in-chief against her.

  **B.**  **Jimenez-Cruz**

With respect to Jimenez-Cruz, the questions are somewhat different but the answers are the same. Brenes's post-arrest statements implicating Jimenez-Cruz and stating that the vehicle from which he was removing items contained controlled substances are likely to be inadmissible hearsay that cannot be admitted in the Government's case-in-chief against him.

Nor can the contents of the suitcase Jimenez-Cruz was removing from the Jeep when he was arrested be admitted against him. That evidence was obtained only as a direct result of the unlawful interrogation of Brenes, would not otherwise have been discovered through a search of

8

Brenes or the vehicle, and should be suppressed to deter police from avoiding constitutional obligations while investigating criminal activity. Allowing its use against Jimenez-Cruz would undermine the deterrent purpose of suppression and instead encourage circumvention of constitutionally protected rights. For example, law enforcement would be able to decide which suspect among several they wanted to see convicted, or which suspect they believed would be the most likely to incriminate himself or herself or others, and intentionally ignore the rights of one suspect (at the expense of acquittal) in order to secure conviction of others.

Independently of the unconstitutional interrogation of Brenes and suppression of evidence obtained as a direct result, any controlled substances found in the suitcase must be suppressed in the Government's case-in-chief against Jimenez-Cruz because he was arrested and the suitcase searched without probable cause. Absent an exception, the Fourth Amendment right to be free from unreasonable search and seizure requires that a warrant for arrest or search issue based on probable cause before a person can be arrested or his effects searched. It is undisputed that there was no warrant either for the arrest of Jimenez-Cruz or for the subsequent search of the suitcase in his possession. According to Sergeant Eversole's police report and unchallenged descriptions of the dash camera video footage, Corporal Jensen arrested Jimenez-Cruz immediately after his unconstitutional interrogation of Brenes, shortly after an unidentified officer said "drugs" audibly enough to be heard on camera, and without having viewed Jimenez-Cruz committing a crime. The only apparent basis for that arrest and subsequent search was Brenes's information that drugs were in the Jeep.

Brenes's statement lacked sufficient indicators of reliability to give rise to probable cause. "An informant's tip may be sufficiently reliable to support a probable-cause determination if the informant has previously supplied reliable information or if the tip is corroborated by independent

9

evidence." *United States v. Hernandez-Pacheco*, 334 Fed. App'x 795, 799 (8th Cir. 2009) (quoting *United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005)). In *Hernandez-Pacheco*, the Court of Appeals reviewed the denial of a motion to suppress. There, following a controlled buy of methamphetamine, police searched the seller and his vehicle with his consent and found methamphetamine and nearly $14,000 in cash. The seller identified his source of supply, Hernandez-Pacheco, by a nickname, confessed to regularly obtaining between five and eight pounds of methamphetamine from Hernandez-Pacheco, identified Hernandez-Pacheco's home, and described the hidden location of three pounds of methamphetamine in the rafters of the home's garage. An Immigration and Customs Enforcement Special Agent separately claimed to have information that a person with that nickname lived in the area and regularly traveled out-of-state to obtain methamphetamine. Based on this information, law enforcement sought and obtained a search warrant for the home and arrested Hernandez-Pacheco after they found methamphetamine in the garage rafters. In that case, the Government argued that although the seller was not previously a reliable informant, the specificity of his information and the corroboration from the ICE Special Agent were sufficient indicia of reliability to establish probable cause and justify the issuance of a warrant to search Hernandez-Pacheco's home. The Eighth Circuit described the legal issue of reliability as "a close question," but avoided answering it because the good-faith exception to the exclusionary rule would permit the admission of evidence seized pursuant to the warrant that issued. *Hernandez-Pacheco*, 334 Fed. App'x at 800.

If the fact pattern in *Hernandez-Pacheco* made the question of sufficient reliability for probable cause a close one, the fact pattern in this case, comparatively lacking in indicia of reliability to bolster Brenes's statements, makes the answer clear. Brenes's statements lacked any specificity. She responded affirmatively, but generally, to a question about whether drugs were

somewhere in the Jeep and described the amount as "a lot." She did not say that a specific quantity of a specific controlled substance would be found in the suitcase inside the rear of the vehicle. And while a statement against her own interest might bolster Brenes's reliability in other circumstances, here it was an involuntary statement resulting from a custodial interrogation, which instead reduces its reliability. *See Withrow v. Williams*, 507 U.S. 680, 692 (1993) (explaining *Miranda* protects judicial process against the use of coerced confessions, which are unreliable). The circumstances surrounding the confession that a lot of drugs were in the vehicle—Brenes's being from California, driving a rental car on a suspended license, speaking (regardless of the language) to the other vehicle occupant when being arrested outside of her home state, and going to a wedding with less luggage than an officer deems appropriate—do nothing to bolster the reliability of the information Brenes gave to Corporal Jensen.

Perhaps recognizing the weakness in any argument that Brenes's statements were sufficiently reliable to establish probable cause, the Government argues that because of those other circumstances, probable cause to arrest and search the vehicle existed independently of and before Brenes's statements. (Doc. 38, p. 7). The inquiry into the existence of probable cause is objective and focused on the circumstances. *Whren v. United States*, 517 U.S. 806, 811–13 (1996). The circumstances known to Corporal Jensen in this case were that Brenes and Jimenez-Cruz were traveling cross-country from California, Brenes was driving on a suspended license, they were in a rented car, were speaking in Spanish, and had a suitcase that was less luggage than Corporal Jensen deemed appropriate for cross-country travel. (Doc. 38, p. 7). Sergeant Eversole was aware of even fewer of these circumstances, having arrived on scene, learned of Corporal Jensen's hunch that illegal activity was occurring, and watched Corporal Jensen perfunctorily arrest Jimenez-Cruz without Jimenez-Cruz having done anything indicative of criminal activity.

11

Objectively, these circumstances do not, and cannot, support probable cause to believe a crime is being committed or that weapons or contraband will be found in a vehicle. Travelers regularly rent vehicles and travel cross-country to other states from California, and the fact that they do so for common occurrences like weddings and that they may carry less luggage than an officer subjectively believes is appropriate does not even give rise to reasonable suspicion, let alone probable cause. *See United States v. Beck*, 140 F.3d 1129, 1137–40 (8th Cir. 1998) (holding that a defendant's use of a rental car rented by a third party and licensed in California to travel cross-country in search of work did not give rise to reasonable suspicion to conduct a *Terry* stop, even despite absence of visible luggage, presence of fast food wrappers, nervousness of driver, and law enforcement officer's disbelief of the defendant's stated purpose for the trip).

That those travelers in this case spoke another language than English does nothing to bolster the Government's argument that probable cause to arrest or search existed. A substantial number of people living in the United States speak a foreign language, and specifically Spanish. *See* United States Census Bureau, Language Use in the United States: 2011, p. 7, tbl. 2 (Aug. 2013) (available at https://www2.census.gov/library/publications/2013/acs/acs-22/acs-22.pdf) (showing increase in Spanish-speaking population of United States from 11,116,194 in 1980 to 36,995,602 by 2010). There is no evidence, in either the Government's response or objective reality, that speaking Spanish correlates significantly with conducting criminal activity. Brenes and Jimenez-Cruz's Spanish communications, coupled with the apparently innocent circumstances of their cross-country travel, do not help to establish probable cause to arrest or search. The fact that Jimenez-Cruz was traveling with Brenes while she drove on a suspended license also does not support a finding of probable cause particularized to Jimenez-Cruz because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give

rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

The unwarranted arrest of Jimenez-Cruz and the search of the suitcase were not supported by probable cause. As with Brenes, the grossly negligent nature of the constitutional violations by Van Buren police officers, one of whom is responsible for training new police officers, requires suppression of the evidence to deter continued unconstitutional police investigative tactics. Because Jimenez-Cruz was being permitted to leave with the suitcase full of contraband prior to the unlawful arrest and search, discovery of the evidence was not inevitable, and no exception to the warrant requirement saves the Government's evidence from exclusion.

## IV. Conclusion

IT IS THEREFORE ORDERED that the motions (Docs. 34 and 37) are GRANTED. Brenes's confession is inadmissible in the Government's case-in-chief against Brenes and, barring a motion in limine demonstrating an exception to the inadmissibility of hearsay, are also inadmissible in the Government's case-in-chief against Jimenez-Cruz. The methamphetamine, oxycodone, and any other items found in the suitcase at the scene of the collision are also inadmissible in the Government's case-in-chief against Brenes and Jimenez-Cruz.

IT IS SO ORDERED this 1st day July, 2019.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE